**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GEOFFREY PESCE, ) | |
| ) | C.A. No. 18-cv-11972 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KEVIN F. COPPINGER, in his official ) | |
| capacity as Essex County Sheriff, ) | |
| AARON EASTMAN, in his official ) | |
| capacity as Superintendent of the Essex ) | |
| County House of Corrections - Middleton, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT
AND REQUEST FOR EMERGENCY INJUNCTIVE RELIEF**

Plaintiff Geoffrey Pesce complains against Defendant Essex County Sheriff Kevin F. Coppinger and Defendant Superintendent of the Essex County House of Corrections – Middleton ("Middleton HOC") Aaron Eastman (collectively, the "Defendants") as follows:

**INTRODUCTION**

1. This is a civil rights action challenging the denial of adequate medical care by Middleton HOC, which is overseen by Defendants.

2. Mr. Pesce lives with his parents and his young son in Ipswich, Massachusetts. He is employed as a machinist and is an important source of income for his family.

3. Mr. Pesce suffers from opioid use disorder, which is a chronic brain disease with potentially deadly complications. Mr. Pesce unsuccessfully attempted to overcome his addiction for years through multiple treatment programs. He was finally able to achieve active recovery in

1

late 2016, when he was prescribed methadone as part of a substance abuse treatment program in Danvers, Massachusetts. Mr. Pesce has now been in active recovery for almost two years, during which time he has not used illegal drugs. He very much wants to remain in recovery for himself, his parents, and his son.

4. Medication-assisted therapy or "MAT" is the use of FDA-approved pharmaceutical medications in combination with counseling and behavioral therapies for the treatment of substance use disorders. MAT is widely regarded as the standard of care for the treatment of opioid use disorder. Methadone, for example, has been used to treat opioid use disorder since the 1940s. The daily dosage of methadone, which is administered orally, blocks the opioid receptors in the brain and thereby suppresses drug cravings and opioid withdrawal symptoms. As part of Mr. Pesce's MAT regimen, he receives counseling and other therapies in addition to his medications. This is the only method of treatment that has worked for him.

5. Methadone is generally administered to a patient on a daily basis by medical staff in a clinical environment. However, patients who demonstrate compliance with the treatment program and satisfy other criteria may earn "take home" privileges, which permit the patient to administer methadone to themselves at home. Mr. Pesce was initially required to travel to the Lahey Health Behavioral Services clinic in Danvers, Massachusetts every day to receive his medication. By last summer, he had earned "take home" privileges that allowed him to travel to the clinic only once every three days and to administer the intervening doses to himself at home.

6. Mr. Pesce's driver's license is revoked or suspended due to a non-violent substance abuse-related conviction arising from a charge that pre-dates his recovery. As a result, Mr. Pesce is generally dependent upon his parents to drive him to the clinic in Danvers.

7. On July 19, 2018, Mr. Pesce's mother was unexpectedly unable to drive him to his daily methadone treatment due to the death of a neighbor. Desperate not to relapse, Mr. Pesce elected to drive himself to treatment. He was pulled over in Ipswich for driving six miles per hour over the speed limit. He was charged with speeding and driving with a revoked or suspended license.

8. Mr. Pesce will likely plead guilty to and be sentenced for his pending charges at his next court hearing in Ipswich District Court, which has been calendared for September 24, 2018. This guilty plea would carry a mandatory minimum sentence of 60 days' incarceration, which Mr. Pesce would likely be ordered to serve at Middleton HOC. A 60-day sentence at Middleton HOC, which will likely begin next week, will significantly jeopardize Mr. Pesce's recovery, force him to suffer painful withdrawal symptoms, and put his life at risk.

9. Despite the medical consensus that MAT is the standard of care for opioid use disorder, Middleton HOC does not provide MAT for male inmates with opioid use disorder, even for individuals like Mr. Pesce who are already taking methadone prescribed by their physician when they enter custody.

10. If Mr. Pesce is not provided his prescribed methadone, he will enter acute withdrawal, which is extremely painful and carries a heightened risk for numerous serious medical conditions. Further, there is a high probability that cessation of Mr. Pesce's prescribed methadone treatments will result in a relapse into opioid use either during or immediately following his incarceration, accompanied by elevated risk of overdose and death.

11. Mr. Pesce is particularly afraid of this outcome because his former roommate died of an overdose shortly after he was released from Middleton HOC.

12. The denial of necessary medical care violates Mr. Pesce's right to be free from discrimination based upon his disability as guaranteed by the Americans with Disabilities Act. Additionally, Defendants' deliberate indifference to Mr. Pesce's serious medical need, and to the suffering and long-term consequences of forced withdrawal, violate Mr. Pesce's constitutional right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

13. Mr. Pesce seeks emergency, preliminary, and permanent relief to require Defendants to provide him with adequate medical care and prevent suffering. Specifically, he seeks a declaratory relief and an injunction requiring the Defendants to provide Mr. Pesce with access to his medically necessary, physician-prescribed methadone during the course of his incarceration at Middleton HOC.

## THE PARTIES

14. Plaintiff Geoffrey Pesce is a resident of Ipswich, Massachusetts.

15. Defendant Kevin F. Coppinger is the Sheriff of Essex County, Massachusetts, in which capacity he is responsible for the housing and care of inmates in Essex County facilities, including Middleton HOC. He is being sued in his official capacity only.

16. Defendant Aaron Eastman is the Superintendent of Middleton HOC, located in Essex County, Massachusetts, in which capacity he is responsible for the housing and care of inmates in that facility. He is being sued in his official capacity only.

## JURISDICTION AND VENUE

17. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action seeks to vindicate rights guaranteed by the Eighth Amendment to the United States Constitution,

pursuant to 42 U.S.C. § 1983.  This action is also brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134.

18.     Venue lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391.

## FACTS

### A.  Opioid Use Disorder Is a Life-Threatening Medical Condition.

19.     Opioids are a class of drugs that inhibit pain and can have euphoric side effects.  Many opioids have legitimate medical uses, including chronic pain management.  Others, such as heroin, are not generally used in medicine in the United States but are sold on the black market.

20.     Opioid use disorder is a chronic brain disease with potentially deadly complications.  Signs of opioid use disorder include craving, increasing tolerance to opioids, the inability to cut back or control opioid use, withdrawal symptoms, and a loss of control.

21.     Like other chronic diseases, opioid use disorder often involves cycles of relapse and remission.  Without treatment or other recovery, patients with opioid use disorder are frequently unable to control their use of opioids.  Opioid use disorder is progressive and can result in disability or premature death, including due to accidental overdose.

22.     The opioid crisis in this country has been well documented.  An estimated 2.5 million Americans suffer from opioid use disorder.  More than half a million people have died from opioid overdose in the last 20 years, and the death toll from opioid overdose has risen exponentially just in the last five years.[1]  In 2016, a reported 64,070 people died from drug

---

[1] Centers for Disease Control and Prevention, *Opioid Overdose: Understanding the Epidemic*, *available at* https://www.cdc.gov/drugoverdose/epidemic/index.html (last updated August 20, 2017).

overdoses—with an estimated 66% of those deaths involving opioids.[2] Every day, more than 115 Americans die after overdosing on opioids—equivalent to one person every 12.5 minutes.[3]

23. Opioid use disorder is a public health crisis in Massachusetts. According to the Massachusetts Department of Health, there were 2,069 confirmed and estimated opioid-related overdose deaths in Massachusetts in 2017, *i.e.*, an average of almost six opioid-related overdose deaths *per day*.[4] Opioid-related deaths in Massachusetts were more than four times higher in 2015 than in 2000. The opioid-related death rate in Massachusetts has surpassed the national average, with an especially sharp rise in the last two years. In 2014, the fatal overdose rate in Massachusetts was more than double the national average.[5]

24. Opioid use disorder has impacted Essex County with particular severity. Among the 14 counties in the Commonwealth, Essex County had the second highest number of opioid-related deaths for the calendar year 2017, as well as for the period from 2000-2017.[6]

---

[2] Ashley Welch, *Drug overdoses killed more Americans last year than the Vietnam War*, CBS NEWS (Oct. 17, 2017), *available at* https://www.cbsnews.com/news/opioids-drug-overdose-killed-more-americans-last-year-than-the-vietnam-war/.

[3] Centers for Disease Control and Prevention, *Opioid Overdose: Understanding the Epidemic*, *available at* https://www.cdc.gov/drugoverdose/epidemic/index.html (last updated August 20, 2017).

[4] Massachusetts, Department of Public Health, Data Brief: Opioid-Related Overdose Deaths Among Massachusetts Residents (August 2018), *available at* https://www.mass.gov/files/documents/2018/08/24/Opioid-related%20Overdose%20Deaths%20among%20MA%20Residents%20-%20August%202018_0.pdf.

[5] Massachusetts Department of Public Health, The Massachusetts Opioid Epidemic, A data visualization of findings from the Chapter 55 report, http://www.mass.gov/chapter55/ (last visited Sept. 18, 2018).

[6] Massachusetts Department of Public Health, Number of Opioid-Related Overdose Deaths, All Intents by County, MA Residents: 2000-2017 (August 2018), *available at* https://www.mass.gov/files/documents/2018/08/24/Opioid-related%20Overdose%20Deaths%20by%20County%20-%20August%202018_0.pdf.

6

25. The Pesce family is well-acquainted with the severity of this epidemic in their home town. Mr. Pesce's father personally knows several people who have overdosed and died in Ipswich.

26. Opioid use disorder is especially dangerous for people who are or have been incarcerated. A recent study by the Massachusetts Department of Public Health found that "[t]he opioid overdose death rate is 120 times higher for those recently released from incarceration compared to the rest of the adult population."[7] The same study found that "[o]pioid-related deaths among persons recently released from incarceration [in Massachusetts] have increased 12-fold between 2011 and 2015," and, "[i]n 2015, nearly 50% of all deaths among those released from incarceration were opioid-related."

> **B. Medication-Assisted Treatment Is the Standard of Care for Opioid Use Disorder, and the Government's Arbitrary Discontinuation of Such Treatment for an Incarcerated Individual Would Violate that Standard.**

27. MAT is the standard of care for opioid use disorder.

28. MAT "is a comprehensive approach that combines FDA-approved medications . . . with counseling and other behavioral therapies to treat patients with opioid use

---

[7] Massachusetts Department of Public Health, An Assessment of Fatal and Nonfatal Opioid Overdoses in Massachusetts 2011-2015 (August 2017), *available at* https://www.mass.gov/files/documents/2017/08/31/legislative-report-chapter-55-aug-2017.pdf.

Chapter 55 of the Acts of 2015, as amended by Chapter 133 of the Acts of 2016, instructed the Secretary of Health and Human Services and the Department of Public Health to "conduct or provide for an examination of the prescribing and treatment history, including court-ordered treatment or treatment within the criminal justice system, of persons in the commonwealth who suffered fatal or nonfatal opiate overdoses." The preliminary "Chapter 55" report for years 2013-2014 was published on September 15, 2016. On August 16, 2017, the Executive Office of Health and Human Services released an updated report for years 2011 through 2015.

disorder (OUD)."[8]  Three medications used in MAT are methadone (sold under brand names such as Dolphine and Methadose), buprenorphine (sold under brand names such as Subutex, Suboxone, and Bunavail), and naltrexone (sold under brand names such as ReVia and Vivitrol). These medications have been approved by the United States Food and Drug Administration for treatment of opioid addiction.

29.     Naltrexone works by blocking opioids from producing their euphoric effects and thus reducing a desire for opioids over time.  Buprenorphine and methadone act through a different mechanism than naltrexone: both activate rather than block opioid receptors to relieve withdrawal symptoms. Because of this important ability to act on opioid receptors without presenting the same risk of overdose, buprenorphine and methadone have both been deemed "essential medicines" according to the World Health Organization.[9]  Both methadone and buprenorphine facilitate extinction learning (a gradual decrease in response to a stimulus, such as an opioid), because patients learn that they will not get the same "high" from taking illicit drugs like heroin and fentanyl.

30.     As with any prescription medication, patients' responses to these medications are individualized—a patient may find, through trial and error, that only one of these medications providing effective treatment without significant adverse side effects.

31.     The results of treatment with MAT are dramatically superior to other treatment options.  Studies of MAT show improved retention in treatment, abstinence from illicit drugs,

---

[8] FDA News Release, *FDA approves first generic version of Suboxone® sublingual film, which may increase access to treatment for opioid dependence* (June 14, 2018), *available at* https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm610807.htm.

[9] *See* National Institute on Drug Abuse, *Effective Treatments for Opioid Addiction*, https://www.drugabuse.gov/publications/effective-treatments-opioid-addiction/effective-treatments-opioid-addiction (last updated Nov. 2016).

and decreased mortality. MAT has been shown to decrease opioid use, opioid-related overdose deaths, criminal activity, and infectious disease transmission.[10] MAT has also been shown to increase patients' social functioning and retention in treatment. The U.S. Food and Drug Administration recently reported, "[a]ccording to the Substance Abuse and Mental Health Services Administration, patients receiving MAT for treatment of their [opioid use disorder] cut their risk of death from all causes in half."[11]

32. The primary driver of treatment efficacy in MAT regimens is the medication. For example, buprenorphine and methadone have been clinically proven to reduce opioid use more than (1) no treatment, (2) outpatient treatment without medication, (3) outpatient treatment with placebo medication, and (4) detoxification only. Studies have shown that maintenance medication treatments of opioid use disorder reduce all-cause and overdose mortality and have a more robust effect on treatment efficacy than behavioral components of MAT.[12] MAT also is far more effective than detoxification alone, which produces very poor outcomes. For example, one study documented the treatment outcomes from a detoxification facility and showed (1) a

---

[10] Volkow, ND et al., *Medication-Assisted Therapies — Tackling the Opioid Overdose Epidemic.*, 370 New Eng. J. Med. 2063, 2064 (May 29, 2014), *available at* https://www.nejm.org/doi/pdf/10.1056/NEJMp1402780; National Institute on Drug Abuse, *Effective Treatments for Opioid Addiction*, https://www.drugabuse.gov/publications/effective-treatments-opioid-addiction/effective-treatments-opioid-addiction (last updated Nov. 2016).

[11] FDA News Release, FDA approves first generic version of Suboxone® sublingual film, which may increase access to treatment for opioid dependence (June 14, 2018), *available at* https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm610807.htm.

[12] *See* Amato L, et al., *Psychosocial combined with agonist maintenance treatments versus agonist maintenance treatments alone for treatment of opioid dependence*, Cochrane Database Syst. Review, Oct. 10, 2011 at 13.

twenty-nine percent relapse on the day of discharge, (2) a sixty percent relapse after one month, and (3) a success rate of between only five to ten percent after one year.[13]

33.     Once a patient is successfully recovering from opioid use disorder through MAT, the arbitrary and sudden cessation of the medication violates the standard of care and, in the case of methadone and buprenorphine, will cause excruciating withdrawal symptoms within 48 hours of cessation.  Withdrawal symptoms include severe dysphoria, cravings for opiates, irritability, sweating, nausea, tremor, vomiting, insomnia and muscle pain.  These symptoms can sometimes lead to life-threatening complications.

### C.     The Availability of Medication-Assisted Treatment Is Particularly Important in Correctional Settings and Is Administrable in Such Settings.

34.     Numerous authorities have recommended providing MAT in prison to help address the particularly serious risks the opioid crisis poses for incarcerated individuals. Providing MAT in prison is administrable and saves lives.

35.     In 2017, the President's Commission on Combating Drug Addiction and the Opioid Crisis found that "[i]n the weeks following release from jail or prison, individuals with or in recovery from [opioid use disorder] are at elevated risk of overdose and associated fatality."[14] The Commission further found that "MAT has been found to be correlated with reduced risk of mortality in the weeks following release and in supporting other positive outcomes," and that "[a] large study of individuals with [opioid use disorder] released from prison found that

---

[13] Bailey, G. L., Herman, D. S., & Stein, M.D. *Perceived relapse risk and desire for medication assisted treatment among persons seeking inpatient opiate detoxification.,* J. Subst. Abuse Treat, 45(3):302-305 (2013); Valliant GE.  *What does long-term follow-up teach us about relapse and prevention of relapse in addiction?* Br. J Addict:  83(10):1147-57 (1988).

[14] The President's Commission on Combating Drug Addiction and the Opioid Crisis (Nov. 1, 2017), *available at* https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-1-2017.pdf.

10

individuals receiving MAT were 75% less likely to die of any cause and 85% less likely to die of drug poisoning in the first month after release."

36. The American Society of Addiction Medicine, the leading professional society in the country on addiction medicine, also recommends treatment with MAT for people with opioid use disorder in the criminal justice system.[15]

37. The National Commission on Correctional Health Care has also adopted a position statement calling for the "[c]ontinuation of prescribed medications for substance use disorders," such as buprenorphine and methadone.[16]

38. The United States Department of Justice's Adult Drug Court Discretionary Grant Program has gone even further, requiring grantees to permit the use of MAT.[17]

39. As recognized by these authorities, opioid use disorder is a chronic relapsing condition that requires medically appropriate treatment just like other chronic diseases. Once patients start on MAT, they need to be maintained on that treatment under medical supervision to give them the best chances of success.

40. Forced withdrawal is not medically appropriate for patients being treated with MAT. It disrupts their treatment plan, leading to a seven-fold decrease in continuing MAT after

---

[15] Kampman, Kyle & Jarvis, Margaret, *American Society of Addiction Medicine (ASAM) National Practice Guideline for the Use of Medications in the Treatment of Addiction Involving Opioid Use,* J. Addict. Med. (2015);9(5):1-10, *available at* https://www.asam.org/docs/default-source/practice-support/guidelines-and-consensus-docs/asam-national-practice-guideline-jam-article.pdf.

[16] National Commission on Correctional Health Care, Substance Use Disorder Treatment for Adults and Adolescents, https://www.ncchc.org/substance-use-disorder-treatment-for-adults-and-adolescents (last visited Sept. 18, 2018).

[17] U.S. Dept. of Justice, Adult Drug Court Discretionary Grant Program FY 2018 Competitive Grant Announcement, (June 5, 2018) *available at* https://www.bja.gov/funding/DrugCourts18.pdf.

release. Discontinuation of MAT increases the risk of relapse into active addiction. Over 82% of patients who leave methadone treatment relapse to intravenous drug use within a year. Death is three times as likely for people out of treatment versus when in treatment.[18]

41. Reflecting this knowledge, numerous jails and prisons follow the medical standard of practice and allow prisoners to continue with MAT during incarceration. Examples include Bernalillo County Metropolitan Detention Center (New Mexico); Rikers Island Correctional Facility (New York); Kings County Jail (Washington State); Orange County Jail (Florida). The Rhode Island Department of Corrections makes MAT available to all its prisoners, even those (unlike Mr. Pesce) who were not receiving MAT before being incarcerated.

42. In addition, on information and belief, South Bay Correctional Center makes MAT available to pregnant and postpartum inmates by contracting with a local provider.

### D. Middleton HOC Categorically and Arbitrarily Denies Inmates Medication-Assisted Treatment for Opioid Use Disorder.

43. As a matter of policy and practice, Middleton HOC categorically and arbitrarily denies all male prisoners access to MAT for the treatment of opioid use disorder, even if MAT has been prescribed by a physician as a medically necessary treatment, and has no plans to alter this policy for the foreseeable future.[19]

---

[18] Rich JD, McKenzie M, Larney S. Wong JB. Tran L, Clarke J. (2015) Methadone continuation versus forced withdrawal on incarceration in a combined US prison and jail: a randomized, open-label trial. Lancet: 386: 350-9; Ball JC, Ross A. (1991). The Effectiveness of Methadone Maintenance Treatment. New York, NY: Springer-Verlag; Evans E, Li L, Min J, Huang D, Urada D, Liu L, Hser YI, Nosyk B. (2015). Mortality among individuals accessing pharmacological treatment for opioid dependence in California, 2006-10. *Addiction*; 110(6): 996-1005.

[19] Some facilities in Massachusetts have a limited exception for where MAT is maintained for pregnant female inmates.

44. As explained above, prisoners with opioid use disorder have a heightened risk for relapse and overdose, with overdose and death especially high in the first weeks immediately following release. Accordingly, Defendants' policies will force Mr. Pesce into a dangerous and potentially life-threatening withdrawal.

45. On March 16, 2018, the U.S. Attorneys' Office for the District of Massachusetts initiated an investigation of the Massachusetts Department of Correction (DOC) "focus[ing] on provision of services for individuals with Opioid Use Disorder (OUD) whose disability, prior to confinement, has been identified as requiring [MAT]."[20] According to the Department of Justice's letter instituting the investigation, "individuals in treatment for OUD entering DOC facilities, who are being treated with MAT"—like Mr. Pesce—"are not allowed access to MAT while in DOC's custody." The Department of Justice stated that "all individuals in treatment for OUD, regardless of whether they are inmates or detainees, are already protected by the [Americans with Disabilities Act] and that the DOC has existing obligations to accommodate this disability."

46. The Massachusetts legislature recently acknowledged that MAT is administrable in prisons and jails as well. In August 2018, the legislature enacted "An Act for Prevention and Access to Appropriate Care and Treatment of Addiction" (Acts of 2018, Ch. 208). That Act establishes "a pilot program for the delivery of medication-assisted treatment for opioid use disorder at the county correctional facilities located in Franklin, Hampden, Hampshire, Middlesex and Norfolk counties." Among other things, the pilot programs will include "the capacity to possess, dispense and administer all drugs approved by the [FDA]" for that purpose

---

[20] Letter from Andrew E. Lelling, United States Attorney, to David Solet, General Counsel, Executive Office of Public Safety and Security and Jesse Caplan, General Counsel, Executive Office of Health and Human Services, (March 16, 2018), attached as Exhibit A to the complaint.

13

and "provid[ing] medication-assisted treatment to a person in the custody of the facility, in any status, who was receiving medication-assisted treatment for opioid use disorder . . . by a valid prescription immediately before incarceration."

47.     Middleton HOC is not included among the pilot programs.  In addition, the Act does not require such pilot programs to be implemented until September 1, 2019, and, on information and belief, they are not currently scheduled to be implemented prior to that time.

48.     As a result, the Franklin County HOC is the only Massachusetts House of Corrections that currently provides MAT to male inmates in Massachusetts.  This program provides buprenorphine to inmates who arrive with a prescription for that medication but does not currently provide methadone to inmates.

49.     Inmates in a county HOC depend upon the HOC to provide them with all medical care.  *See* 103 CMR 932.

50.     As a result, Middleton HOC provides medically necessary care to other inmates in its custody, but not to inmates who suffer from opioid use disorder.

### E.    Without Judicial Intervention, Mr. Pesce Will Be Denied Medically Necessary Treatment for His Opioid Use Disorder When He Is Incarcerated on or about September 24, 2018.

51.     Mr. Pesce is diagnosed with opioid use disorder, a serious medical need and a recognized disability.  If untreated, Mr. Pesce's opioid use disorder is likely to result in relapse and potentially a fatal opioid overdose, among other things.

52.     Mr. Pesce has struggled with addiction for years.  Before he was prescribed methadone, he overdosed at least six times and tried to detox at least four times.  He was also treated with buprenorphine and naltrexone, but these medications were not effective in supporting his long term recovery.

14

53. MAT with methadone has been the only treatment that has enabled Mr. Pesce to remain in active recovery and get his life back.

54. Since December 2016, Mr. Pesce has been prescribed methadone for treatment of his opioid use disorder. Since Mr. Pesce began treatment with methadone nearly two years ago, he has not used illegal drugs.

55. Methadone is medically necessary for the treatment of Mr. Pesce's serious medical condition.

56. Mr. Pesce is currently facing charges that would result in a mandatory minimum sentence of 60 days. *See* Mass. Gen. Laws Ch. 90 § 23. His case is pending in Ipswich District Court in Essex County, where he is due to appear on September 24, 2018. On information and belief, he will be sentenced and taken into custody on that date to Middleton HOC.

57. On September 12, 2018, Mr. Pesce's counsel sent a letter to both Defendants informing them of his serious medical need and requesting assurance that Mr. Pesce will be provided with MAT, specifically including his physician-prescribed doses of methadone, during his time in their custody. The letter requested a response by September 17, 2018 but as of this filing Mr. Pesce's counsel have received no response. Accordingly, the relevant officials at Middleton HOC have been informed of Mr. Pesce's diagnosis and need for medical treatment, but it appears that they will not provide such treatment while he is incarcerated in their facility beginning on or about September 24, 2018.

## COUNT I – 42 U.S.C. § 1983 AND THE EIGHTH AMENDMENT
### (Deliberate Indifference to Serious Medical Need in Violation of the Eighth Amendment)

58. The foregoing allegations are re-alleged and incorporated herein.

59. The Defendants, while acting under color of state law, deliberately, purposefully, and knowingly deny Mr. Pesce access to necessary medical treatment for his opioid use disorder, which is a serious medical need.

60. Denying Mr. Pesce access to his prescribed dosage of methadone will cause him physical and psychological suffering, will expose him to heightened risk for other serious medical conditions, and could trigger relapse into active addiction, potentially resulting in overdose and death.

61. As applied to Mr. Pesce, the denial of treatment by Defendants amounts to deliberate indifference to a serious medical need, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and 42 U.S.C. § 1983.

### COUNT II - AMERICANS WITH DISABILITIES ACT
**(Unlawful Discrimination Against Qualified Individuals with Disabilities)**

62. The foregoing allegations are re-alleged and incorporated herein.

63. Middleton HOC, which is overseen by Defendants, is a public entity subject to the Americans with Disabilities Act (ADA).

64. Drug addiction is a "disability" under the ADA. *See* 42 U.S.C. §§ 12102 and 12131(2); 28 C.F.R. § 35.108 (the phrase "physical or mental impairment includes, but is not limited to . . . drug addiction, and alcoholism.").

65. The ADA applies to people, like Mr. Pesce, who are participating in a supervised drug rehabilitation program.

66. Defendants deny Mr. Pesce the benefits of the Middleton HOC's medical programs on the basis of his disability.

67. Defendants refuse to make a reasonable accommodation for Mr. Pesce by providing him with access to his prescribed dosage of methadone during his incarceration,

thereby discriminating against him on the basis of disability, even though accommodation would in no way alter the nature of the healthcare program.  On information and belief, Defendants do not deny medically necessary, physician-prescribed medications to other inmates with serious, chronic medical conditions, such as diabetes.

## PRAYER FOR RELIEF

Wherefore, Mr. Pesce asks this Court to GRANT the following relief:

1. Emergency, preliminary, and permanent injunctive relief ordering Defendants to provide Mr. Pesce with access to MAT, including the methadone dosage prescribed by his physician, during his incarceration;

2. Award Mr. Pesce his attorneys' fees and costs; and

3. Any further relief this Court deems just and proper.

Respectfully submitted,

GEOFFREY PESCE,

By his attorneys,

/s/ *Robert Frederickson III*
Robert Frederickson III (BBO 670111)
Michael Pickett (BBO 698618)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  617.570.1000
Fax.:  617.523.1231
RFrederickson@goodwinlaw.com
MPickett@goodwinlaw.com

Ira Levy (*Pro hac vice* pending)
Alexandra Valenti (*Pro hac vice* pending)
Jenny Zhang (BBO 689838)
GOODWIN PROCTER LLP
The New York Times Building
620 Eight Avenue
New York, NY 10018

Tel.:  212.813.8800
Fax.:  212.355.3333
ILevy@goodwinlaw.com
AValenti@goodwinlaw.com
JZhang@goodwinlaw.com

Matthew R. Segal (BBO # 654489)
Jessie J. Rossman (BBO # 670685)
Daniel L. McFadden (BBO # 676612)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
211 Congress Street
Boston, MA 02110
Tel.:  (617) 482-3170
msegal@aclum.org
jrossman@aclum.org
dmcfadden@aclum.org

*Attorneys for Plaintiff*

Dated:   September 19, 2018